# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 5, 2010

## JUSTIN RASHARD FORREST v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-09-31    Roy Morgan, Judge**

**No. W2009-00827-CCA-R3-PC  -  Filed April 14, 2010**

The petitioner, Justin Rashard Forrest, appeals the judgment of the Madison County Circuit Court denying his petition for post-conviction relief. Pursuant to a negotiated plea agreement, the petitioner pleaded guilty to aggravated burglary, especially aggravated kidnapping, and three counts of aggravated robbery in case number 07-337; aggravated burglary and theft in case number 07-285; and possession of marijuana and especially aggravated robbery in 07-286. The trial court sentenced him to an effective sentence of fifteen years in the Tennessee Department of Correction. The petitioner filed a petition for post-conviction relief alleging the ineffective assistance of counsel, and the post-conviction court denied his petition. On appeal, the petitioner contends that the post-conviction court erred when it denied his petition for post-conviction relief. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Justin Rashard Forrest.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Jerry Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

A Madison County grand jury indicted the defendant for aggravated burglary, especially aggravated kidnapping, and three counts of aggravated robbery in case number 07-

337; aggravated burglary and theft of more than $1,000 in case number 07-285; and possession of marijuana and two counts of especially aggravated robbery in case number 07-286. On January 14, 2008, the petitioner pleaded guilty to all counts, and the trial court sentenced him to serve his sentences concurrently for an effective fifteen-year sentence, at 100 percent, in the Tennessee Department of Correction.

During the plea submission hearing, the trial court and the petitioner engaged in a colloquy, and the court advised the petitioner that he had the right to interrupt and ask for an explanation if he did not understand anything. The petitioner stated that he understood that right. The petitioner further stated that he was not under the influence of "alcohol, narcotics or any other mind altering drugs." The petitioner testified that he understood the charges and ranges of penalties that he faced for each case. The court informed the petitioner that he had the right to a speedy trial by jury, an attorney, to confront and cross-examine witnesses and evidence, to testify, and to appeal an unsatisfactory result to a higher court. The petitioner indicated that he understood his rights and understood that by pleading guilty he was waiving his rights. Likewise, the petitioner testified that he understood that his convictions would appear on his record, and courts could use them to enhance any future sentences. Finally the court asked,

> Other than the plea agreement itself that you're asking me to approve, has there been any force or pressure applied, any threats made or promises made . . . to get you to enter your plea of guilty today?

The petitioner answered, "No, sir." Next, the trial judge asked the petitioner if he was satisfied with his attorney's representation, and the petitioner responded, "Yes, sir."

The parties stipulated to the statement of facts for each case, and the petitioner stated that he reviewed the facts and agreed that they were correct.[1] The court reviewed the plea agreement with the petitioner, and the petitioner advised the court that he understood the agreement, which included his convictions, sentences and release eligibility. During the discussion about the agreement, the petitioner asked if the court would release him to federal prison. The trial court advised the petitioner that the state and the Tennessee Department of Correction would determine whether they would release him to federal custody. After questioning the petitioner, the trial court found that the petitioner made his plea freely, voluntarily, and intelligently with "the advice of counsel with whom he's indicated he is satisfied."

---

[1] The state did not recite the facts supporting the petitioner's guilty plea to the court, and thus, they are not included in the transcript of the guilty plea hearing. In addition, the petitioner agreed that the statements contained in the indictments were "substantially correct to the facts of [his] cases;" however, copies of the indictments are not included in the record on appeal.

On February 4, 2009, the petitioner filed a pro se petition for post-conviction relief. The court appointed counsel who filed an amended petition for post-conviction relief. The state filed a response on March 16, 2009. The court held a hearing on April 13, 2009, and the parties presented the following evidence.

The petitioner testified that he filed a petition for post-conviction relief alleging ineffective assistance of counsel. He further testified that he told the trial judge that he did not understand his plea the week before his plea hearing; however, the judge "laughed it off" and again asked if he understood it. The petitioner stated that he and the judge "had some words," and he was removed from the courtroom. He said that he did not "mean to mislead the [c]ourt" on January 14 when he told the judge that he understood his plea, but he felt that he had to plead guilty because trial counsel could never tell him anything about his case. The petitioner also said that he did not intend to mislead the court when he testified that counsel's representation was satisfactory. He explained that he testified that he was satisfied with trial counsel's representation at the plea hearing because he did not think he could get a new lawyer. The petitioner said that he felt coerced into accepting the plea agreement because he did not feel that he could go to trial with his counsel. According to the petitioner, trial counsel did not know anything about his case and answered that "she didn't know, [and they could] try to go to trial with it" when he asked questions.

Concerning case number 07-337, the petitioner testified that counsel gave him a package containing discovery materials but did not discuss the materials with him. The petitioner said that he read the material as trial counsel instructed. After he read the material, the petitioner asked trial counsel why she did not interview the witnesses with whom he had asked her to speak. The petitioner testified that he told trial counsel that his brother and co-defendant, Terrance Forrest[2], could testify that he was not at the scene and did not have anything to do with the case. He also testified that his then girlfriend, Mikal Joy, could testify in his defense. The petitioner did not think that trial counsel filed a notice of alibi witnesses. He stated that trial counsel never spoke with Ms. Joy or anyone else. According to the petitioner, Terrance and Ms. Joy were in the courtroom during his trial, but they did not testify.

In the petition for post-conviction relief, the petitioner alleged that trial counsel did not file a motion to withdraw his guilty plea; however, the petitioner testified that he did not ask her to do so. He stated that trial counsel told him that a plea agreement was in his "best interest," but he felt it was not in his "best interest [be]cause [he] could have went trial and beat this stuff" by telling the jury that he was not involved. The petitioner said that he asked

---

[2] Because the petitioner and Terrance Forrest have the same last name, we will refer to the petitioner, Justin Rashard Forrest, as "the petitioner" and Terrance Forrest as "Terrance." No disrespect is intended to any person described or discussed herein.

trial counsel to investigate tapes and videos if there were any. According to the petitioner, trial counsel did not know what evidence that the state had against the petitioner. He stated that after he read the discovery packet he learned that the victims had identified two other people in the crime. The petitioner said that he wanted trial counsel to "represent[] [him] like she was supposed to, and [they] could have went to trial." He testified that if trial counsel had looked through the discovery file, then they could have talked about the case. The petitioner said it was as though trial counsel did not try to represent him.

The petitioner testified that he did not discuss case number 07-285 with trial counsel. However, he further testified that they met "a couple of times" and discussed another possible suspect in the crime. The petitioner said that he tried to tell trial counsel that he did not have anything to do with the aggravated burglary, but she "just sat there and looked at [him]." He gave trial counsel information about two witnesses, Shawn Greer and Shaka Finley, who could confirm that he did not have anything to do with the burglary, but he did not know what trial counsel did with that information.

Regarding case number 07-286, the petitioner stated that trial counsel did not interview anyone regarding this case, and she "could have went and talked to the victim . . . [and] the other suspects." The petitioner stated that had trial counsel interviewed the people involved in the case, "she would have [known] what she was talking about and could have been ready to go to trial." The petitioner said that trial counsel would have learned that "there was [sic] a whole lot of lies, . . . them [sic] people was lying[,]" and he did not shoot around anyone. The petitioner said that he was present when the shooting took place, but if trial counsel would have investigated "she would have [known] that [he] was just sitting high as Cooter Brown, . . . [and] couldn't even tell you [his] name."

The petitioner initially testified that trial counsel did not advise him of his right to appeal. However, he later testified that trial counsel told him that he could appeal if he lost, and he stated that he knew he was going to lose with her as his attorney. The petitioner went on to say that trial counsel told him that once he signed the plea agreement he could not appeal. The petitioner read some "law books" while incarcerated and learned that "anything that you do in the courtroom, you can appeal it." He said that he waived the right to appeal because he "really didn't have [a] choice . . . ." The petitioner also said that he felt coerced and pressured to accept the plea agreement because trial counsel "just really went with whatever [sentence] she would get from [the state] . . . ." The petitioner said that when he and the trial judge had "that little altercation" the week before trial, trial counsel advised him that the "'[b]est thing for [him] to do [was] to just sign for the time, just get it over with.'" The petitioner said trial counsel's advice "let [him] know right there she wasn't on [his] side." He went on to say "I was afraid to go to trial because . . . she [was] the one who [had] to get up and represent me, and every time I asked her something, it was, 'I don't know. Well we can go to trial and find out and see.'" The petitioner stated that when he found out that

-4-

the state was seeking an enhanced punishment, he "signed for it" because he did not want trial counsel to cause him to receive a life sentence. He wanted to research legal books and material in prison so that he could "get the right paper" and "get it [done] how it [was supposed] to be done."

On cross-examination, the petitioner testified that he had been in court and pleaded guilty to charges on "numerous occasions." The petitioner agreed that when he had previously pleaded guilty the judge explained the rights that he was waiving, and he understood that he was waiving his rights. The petitioner stated that he did not understand that he was giving up his right to an appeal; however, he admitted that he answered "Yes, sir" when the judge asked if understood that he was "giving up [his] valuable rights" including the right to an appeal. The petitioner further stated that he and trial counsel went over the charges in the indictment, but the petitioner testified that he did not understand the charges. The petitioner said that although he did not intend to mislead the trial court, his testimony at the plea hearing was not true. He stated that his testimony "wasn't no [sic] lie, but then at the same time, it wasn't no [sic] truth either."

The petitioner recalled writing a letter to Assistant District Attorney General Jody Pickens. In that letter, the petitioner told General Pickens that he was present during the aggravated robbery. The petitioner explained that he was at the scene of the robbery, but there was "no plan, no plot, or nothing [sic] to rob these people." The petitioner stated that he wrote the letter because he wanted the district attorney's office to investigate his case further "instead of just giving [him] that time [that he] was given . . . ." The petitioner testified that he wrote "'[b]ut all I'm asking for is a good deal'" in his letter because he wanted a good deal for selling "dope" to someone, a crime with which the state did not charge him. According to the petitioner, he wanted a deal on what he did and not on a robbery that he did not do.

When asked where he stated in his petition for post-conviction relief that he had an alibi, the petitioner answered that he did not know. He stated that he told his appointed post-conviction counsel about his four alibi witnesses, and post-conviction counsel subpoenaed two of them. The petitioner further stated that post-conviction counsel probably could not find the other witnesses. On redirect examination, he testified that he did not address his alibi witnesses in his petition for post-conviction relief because he was trying to get his petition filed before the deadline. He said that he did allege ineffective assistance of counsel in his petition because trial counsel did not call his witness or investigate the case.

Terrance, the petitioner's brother, testified that he was the petitioner's co-defendant in case number 07-337. He pleaded guilty to aggravated robbery and especially aggravated kidnapping in that case. Terrance stated that the petitioner did not have anything to do with the case. He further stated that the victims "identified [the petitioner], and they thought [the

petitioner] was [him] . . . ." He said that three witnesses were supposed to testify at the preliminary hearing, but only one victim, whom he did not know anything about, testified. Terrance stated that he stood up three times during the hearing to inform the court that the petitioner was not involved in the crime. He further stated that had counsel called him to testify during the petitioner's trial, he would have testified that the petitioner was not involved. Likewise, in his statement to the police, Terrance stated that the petitioner did not have anything to do with the robbery. According to Terrance, trial counsel did not interview him about the case.

On cross-examination, Terrance denied that he told trial counsel that he would not "take all the rap" for the petitioner. He said that the petitioner and another man named Randall did not get involved in this case until Terrance and the victim had a "confrontation at the hotel and [the victims] said [Terrance] robbed [a victim] and tied him up . . . ." Terrance said that what really happened was that he "shorted [the victim] on some drugs" and no one else was involved. Terrance denied that the testimony at trial would show that three men were involved. He maintained that he was the only one present in the hotel room. When asked whether he recalled his statements "'Randall had already left the room," and "[m]e and Randall both went in the room," Terrance then stated that he, Randall, and the three victims were in the room. On redirect examination, Terrance testified that nothing in his statement suggested that the petitioner was present during the crime.

Trial counsel testified that she was employed as a public defender in January 2008, and she represented the petitioner in his three cases. Trial counsel stated that she prepares for her cases by meeting with the client to discuss the case, the district attorney's offer, and whether to modify the offer or prepare for trial. She further stated that this was the manner in which she prepared for the petitioner's case. Trial counsel said that she met with the petitioner three times before the plea agreement, and they exchanged several letters. The letters "alluded to the fact that there was one particular case that [the petitioner] was involved in that he said that there were people who could prove he wasn't there, but [the petitioner] never identified who those people were or gave [her] any way to get in touch with them." She stated that she did not ask the petitioner for that information. Shortly after she got the information, the petitioner decided that he wanted to plead guilty to his state charges because of his pending federal charges. She recalled that his federal charges resulted in the petitioner receiving "like [twenty] years or something." Trial counsel testified that after the petitioner received the federal sentence, he said that "he just wanted to be done with it and not have to come back, just go on to the federal facility." When the petitioner decided this, trial counsel began negotiating with the state, and they agreed that his sentences would run concurrently.

Trial counsel recalled that at the plea hearing the trial judge advised the petitioner of the rights that he was waiving by pleading guilty. She testified that the petitioner never suggested that he did not want to plead guilty. According to trial counsel, the petitioner "just

wanted the best deal he could get," and he got the best deal that she could get for him. She stated that the petitioner agreed to accept the deal and never indicated to her or the court that he wanted anything different. She further stated that had the petitioner decided to go to trial, she would have prepared to represent him at trial.

On cross-examination, trial counsel testified that the petitioner never mentioned Mikal Joy to her. She recalled Terrance giving a statement to the police, but she could not recall the specifics of the report. Trial counsel stated that she did not interview Terrance because private counsel represented him. She further stated that she never discussed the case with Terrance's counsel because "very shortly after the subject came up, [the petitioner] indicated that because of the federal charges, he just wanted to go ahead and plead it out as long as the two sentences could run concurrent." Regarding the petitioner's aggravated burglary charge in case number 07-285, she testified that the petitioner did not give her the names of Shaka Finley or Shawn Greer to interview as potential witnesses. Trial counsel spoke briefly with one victim in that case and what the victim told her "paralleled what he had reported to the police." Trial counsel testified that she did not interview any of the victims and witnesses in the petitioner's especially aggravated robbery case because the petitioner had told her "'I want this over with. I just want to go off and do my time.'" She stated that she and the petitioner discussed the incident that occurred at the Casey Jones Motel the most because "he seemed the most disturbed" about that case. She further stated that the petitioner "wanted [her] to understand that [the incident] didn't go down the way the victim claimed it did." Based on the petitioner's concerns, she talked to the victim who had called the police. She said that she had two different stories, and she would have investigated if the petitioner said that he wanted to go to trial.

On redirect examination, trial counsel stated that the way she approaches case preparation depends on whether the client wants to go to trial or reach a plea agreement. She stated that because the petitioner "made it very clear" that he did not want to go to trial, she used the plea agreement avenue for her defense preparation.

Following the hearing, the post-conviction court entered an order denying the petitioner's request for post-conviction relief. The court made findings of fact and determined that the petitioner "failed to carry his burden of proof in this matter by clear and convincing evidence and that [the petitioner] did enter his guilty plea knowingly and intelligently and that there was nothing that counsel did or did not do that in [any way] affected any right of the [petitioner]." The petitioner timely appealed the judgment of the post-conviction court.

**Analysis**

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is *de novo* with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697.

The two-part standard of proving ineffective assistance of counsel also applies to claims arising out of the plea process. The prejudice requirement is modified so that the petitioner must show a reasonable probability that, but for the errors of counsel, the petitioner would not have pleaded guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994). It is also helpful to note that when determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent

collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

On appeal, the petitioner claims that he received the ineffective assistance of counsel, which caused him to enter an unknowing and involuntary guilty plea. Specifically, the defendant contends that his counsel was ineffective for failing to interview witnesses; address the issues raised by him before the plea hearing; and review, explain, and discuss the discovery materials.

The post-conviction court found that the defendant had effective representation during his guilty plea and that he entered his plea knowingly and voluntarily. The court also found that the petitioner only made "general speculations" regarding the video and other evidence that he wanted trial counsel to investigate, and there was "absolutely no evidence that any videos or similar items existed." The court further found that, contrary to the petitioner's assertions, the guilty plea transcript shows that the petitioner was well advised of the rights that he was giving up by pleading guilty. Likewise, the court found that trial counsel discussed the facts of the case and the charges in the indictment with the petitioner. The post-conviction court did not assign any merit to the petitioner's argument regarding trial counsel's failure to use alibi witnesses and noted that the defendant only presented one witness that he asserted his counsel should have interviewed. The presentation of witnesses at the post-conviction hearing is generally necessary to prove that counsel's failure to present evidence resulted in prejudice to the petitioner. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Although the petitioner presented Terrance as a witness at the post-conviction hearing, the court accredited trial counsel's testimony that she did not pursue using him as a witness because the petitioner decided he wanted to plead guilty. Moreover, the post-conviction court found trial counsel's testimony that the petitioner's only concern was getting a deal that would allow his state and federal sentences to run concurrently was credible. Trial counsel was in the process of interviewing witnesses, but when the petitioner decided that he wanted to plead guilty, she abandoned that avenue of preparation and negotiated the best possible deal for the petitioner. Thus, the post-conviction court found that trial counsel was not deficient. We conclude that nothing in the record preponderates against the post-conviction court's findings; therefore, we affirm the post-conviction court's denial of the defendant's petition.

_____
J.C. McLIN, JUDGE